ORIGINAL

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 16 2012 ★
BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

LANCE LANE,

        Plaintiff,

- against -

CITY OF NEW YORK; N.Y.P.D
DETECTIVE JOHN KENNY, Sh# 6292;
and N.Y.P.D DETECTIVE MITCHELL
ELSENBERG, Sh# 5176,

        Defendant(s).

---

COMPLAINT UNDER 42 U.S.C.A. §1983
TOGETHER WITH MONELL CLAIMS

CV12- 3580

KUNTZ, J.

BLOC

## PARTIES

1. Plaintiff Lance Lane, prior to the allegations complained of, resided at 3025 West 32nd Street, Brooklyn, New York, and has been a resident there for more than 17 years.

2. Defendant(s) John Kenny ("Kenny") and Mitchell Elsenberg ("Elsenberg"), are currently employed, on active duty, and patrolling the streets of New York as N.Y.P.D police officer's with the supervisory rank of Detective.

3. Defendant City of New York is a municipality, and is being sued under "Monell" claims.

## JURISDICTION

4. This Court has jurisdiction under Title 28, as all parties resided, and worked, where all events took place within the confines of Brooklyn, all within the bounderies of the Eastern District.

STATEMENT OF FACTS

5. On April 1, 2011, at around 3 a.m., three New York City Police Officer's were fired upon after making an alleged felony stop. This occurred after a foot chase ensued.

6. Plaintiff during this foot chase who never fired at the officer's, tried to throw away a gun, and accidently shot himself in the right upper leg.

7. Shortly thereafter, plaintiff was found inside of his friends house and escorted by police to the 60th precinct. Upon a search of the plaintiff inside the precinct, officer's noticed alot of bleeding and a bullet hole in the plaintiff's right upper leg. This was about 7:30 a.m.

8. Plaintiff was then turned over to defendant Kenny and Elsenberg who stated "to bad the bullet wasn't in your chest nigger. Fucking apes."

9. Plaintiff asked Kenny if he could go to the hospital because of the burning pain. Without warning, Kenny slapped plaintiff's leg very hard over the area of the bullet wound, causing the plaintiff to scream out loud in extreme pain.

10. Kenny stated immediately after, "no hospital nigger, until you confess to me what happened this morning with names, places and dates."

11. Plaintiff immediately told Kenny that his mother was on the job as a New York City Corrections Officer. Elsenberg then stated, "we're ya moma now nigger." Elsenberg then without warning, punched the plaintiff in his face and said "start talking nigger. That's what you call each other, right?"

12. Kenny stated, "that's because you can't educate monkey's."

13. Plaintiff then went on to ask for a lawyer. Elsenberg said "you want a what?" I repeated, "a lawyer."

14. Elsenberg had gotten up and walked behind plaintiff, and immediately started choking plaintiff hard in a full sleeper hold, at that moment, Kenny punched the plaintiff in his stomach and then right into the bullet hole with his fist.

15. I couldn't cry out from the extreme pain, due to the continued choking. The pain in my leg was like every nerve in my body was on fire, as if all my teeth were pulled out one by one with no pain killers.

16. Elsenberg then let the plaintiff go at which time the plaintiff began to beg for mercy.

17. Kenny then told plaintiff that he would be back. Just before Kenny left, plaintiff asked for water, Kenny said "drink your blood asshole." Elsenberg stayed behind with me.

18. Twenty (20) minutes later, Kenny came back with a night stick in his hands, and started swinging it through the air.

19. Kenny then stated that he wanted to hit a home run on plaintiff's injured leg. Howevger plaintiff was never hit with the night stick, but the beatings and racial slurs continued.

20. At around 12:50 p.m., the plaintiff finally agreed to do and say anything Kenny and Elsenberg wanted to stop the beatings and to get medical treatment that I desperately needed for my leg.

21. Plaintiff agreed to the proposed oral statements of Kenny and took them has his own.

22. At about 1:20 p.m., plaintiff was taken to Lutherian hospital by F.D.N.Y. ambulance for medical treatment.

23. On arrival back to the 60th precinct, plaintiff was brought back to Kenny who told me someone was gonna be there to video tape my sworn confession and that it better be believable or he could make it look like I grabbed for an officer's gun and he had to shoot me in the head.

24. Plaintiff did not doubt what Kenny said, and did what he was told when he went before Assistant District Attorney ("ADA") Lewis Lieberman, at the 11:00 p.m. video confession.

25. The Court is directed to Exhibit(s) "A," "B" and "C" which are on the defendants very own stationary showing the time plaintiff came into the precinct and the time he was first ever, sent to the hospital after 1:15 p.m., some five (5) hours later after being in custody.

## AS FOR A FIRST SEPARATE CAUSE OF ACTION

### MONELL CLAIMS

26. Plaintiff repeats the averments contained in paragraph(s) 1 through 25, as if fully stated herein.

27. Defendant City of New York ("City"), failed to properly train, their police department employees on the proper use of force techniques.

28. Defendant City also allowed a policy or custom to be implimented

and or carried out/or practiced within it's police department to wit, denying criminal suspects their urgent need for medical attention, until after the desired results of their interrogations were met.

29. Defendant City Knew or should have known that this type of conduct, custom, unwritten policy, practice, was taking place within their police department agency.

30. WHEREFORE, plaintiff Lance Lane, will respectfully demand TWO MILLION DOLLARS ($2,000,000.00.), from the City defendant's, together with pain and suffering, mental anguish, caused bythe City defendants policy, rules, customs, unwritten practices, <u>supra</u> by its employees in regards to interrogation techniques.

## AS FOR A SECOND SEPARATE CAUSE OF ACTION

### DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS FROM A BULLET WOUND

31. Plaintiff repeats the averments contained in paragraph(s) 1 through 25, as if fully stated herein.

32. Kenny and Elsenberg, both acting in concert with each other, willfully deprived the plaintiff of his civil rights by denying him seriously needed medical attention for almost five and half (5½) hours to wit, a bullet wound to his upper right leg.

33. Both Kenny and Elsenberg were both deliberately indifferent to plaintiff's serious medical needs. They used the plaintiff's injury against him to get the desired results of a confession.

34. Both Kenny and Elsenberg violated plaintiff's clearly established civil rights, under the 8th and 14th Amendments.

35. WHEREFORE. Lance Lane, will respectfully demand TWO MILLION DOLLARS ($2,000,000.00.), from each defendant (Kenny) (Elsenberg), for pain and suffering, and denial of proper medical treatment.

### AS FOR A THIRD SEPARATE CAUSE OF ACTION

### EXCESSIVE USE OF UNECESSARY FORCE

36. Plaintiff repeats the averments contained in paragraph(s) 1 through 25, and 32 through 34, as if fully stated herein.

37. Kenny and Elsenberg used unnecessary use of force on the plaintiff to get a confession by beating the plaintiff from 8 a.m. to 12:50 p.m., particularly hitting the plaintiff in his open gun shot wound.

38. Said conduct caused plaintiff pain, suffering, fear, and anxieties. Said conduct violated plaintiff's clearly established rights under the 8th and 14th Amendments.

39. WHEREFORE, Lance Lane, will respectfully demand ONE MILLION DOLLARS ($1,000,000.00.), from each defendant (Kenny) (Elsenberg), for pain and suffering, mental anguish, and violation of the 8th and 14th Amendments of the plaintiff's civil rights.

### AS FOR A FOURTH AND FINAL SEPARATE CAUSE OF ACTION

### EQUAL PROTECTION OF LAW

40. Plaintiff repeats the averments contained in paragraph(s) 1 through 25, 32 through 34, and 37 through 38, as if fully stated herein.

41. Kenny and Elsenberg did in fact violate plaintiff's 14th Amendment rights, by denying him equal protection of law, enjoyed by every other citizen.

42. Kenny and Elsenberg did in fact, deny plaintiff immediate medical treatment, due process of law, beat and tortured plaintiff until a confession was given five and a half (5½) hours later, as wellas denied plaintiff an attorney, that was requested two times as soon as questioning began.

43. WHEREFORE, Lance Lane, will respectfully demand ONE MILLION DOLLARS ($1,000,000.00.), from each defendant (Kenny) (Elsenberg), for violatioin of my 14th Amendment Rights, together with any other relief this Court deems just and proper.

### 28 U.S.C.A. §1746

I, LANCE LANE, hereby state under the penalty of perjury, that the above is true and correct to the best of my personal knowledge as I know them to be true.

Dated: July 6, 2012
       Bronx, New York

*Lance Lane*
LANCE LANE, #141-11-04489
Plaintiff, Pro se.
OBCC/ANNEX
1600 Hazen Street
East Elmhurst, N.Y. 11370

Office of the District Attorney
Kings County
CHARLES J. HYNES

THE PEOPLE OF THE STATE OF NEW YORK
    - against -

LANCE LANE
          Defendant

Docket/Indictment: 2011KN020206; 277/2011

## VOLUNTARY DISCLOSURE FORM

Form prepared by: ADA Lewis Lieberman      Date: 6/3/2011

Form served by: _____ Upon: _____ Date: _____

(1) Approximate date, time and place of offense:

| Offense | Date | Time | Place |
|---|---|---|---|
| ATT. AGG. ASSAULT ON A P.O.; ATT ASSAULT 1; | TPO #2 4/1/11 | APPROX 0200 | I/F/O 335 57TH ST |
| ROBBERY 1; ROBBERY 2; ROBBERY 3; | TPO #1 4/1/11 | APPROX 0330 | O/S 3020 SURF |
| CPW 2 (4 COUNTS); CPSP 5 | | | |

(2) Approximate date, time and place of arrest:

| | Date | Time | Place |
|---|---|---|---|
| Defendant #1: | 4/1/11 | APPROX 0700-0800 | 3020 Surf Ave, #8F |

(3) Arresting Officer:

| | Name | Shield | Command |
|---|---|---|---|
| Defendant #1: | DT JOHN KENNY | 6292 | 60 SQD |
| AND | DT. MITCHELL EISENBERG | 5176 | 72 SQD |

(4) Other police officers, excluding any officer whose identity must be confidentially known by the prosecutor to have been present at the time of arrest.

| | Name | Shield | Command |
|---|---|---|---|
| Defendant #1: | Will be provided | | |



Ex "A"

## FACTUAL SYPNOSIS

On 4/1/11 at approximately 0130 hours, 3 plainclothes POs in unmarked RMP stopped an Ultima by using their lights in v/o Surf Ave at the Coney Island Houses. Three individuals exited vehicle and ran. Driver Santana stayed in the car. Sgt Brofsky told the three to stop, identified himself as a P.O., and followed DEF, who was running away from him. DEF fired at Sgt a total of three times as Sgt pursued DEF. Sgt fired 8 shots. DEF ran to 3020 Surf Ave, and is captured on videotape entering building, Sgt following behind.

Both Sgt and PO Feliciano recognized DEF.

A .380 automatic was recovered in the incinerator at 3030 Surf, an adjacent building. DEF lives at 3025 Surf. Bloody clothes were also recovered in that incinerator.

Pursuant to warrant, Ultima was searched. A cell phone belonging to a robbery victim who described the getaway car as an Ultima was recovered in the back seat. Line-ups pending. That robbery took place about two hours earlier in the 72nd pct. (see additional information)

DEF apprehended several hours later by Warrants at friend Tajh Preacher's apartment, 8F at 3020. After ½ hour speaking with Dts, DEF stated he had a bullet in his leg. EMT brought him to Lutheran, where he was treated and released. The bullet entered DEF's thigh, and is lodged in his lower leg. DEF claims he shot himself when gun went off accidentally in the lobby of 3020, later stating he shot himself outside, and might have accidentally shot twice.

## IDENTIFICATION

No identification procedures were performed. Both Sgt Brofsky and PO Feliciano recognized DEF when he exited vehicle. He is well known in the 60

## STATEMENT

DEF made a videotaped statement, R11-0033 to ADA Lew Lieberman at 2300 hours at 60 Sqd. Also present Dt. John Kenny. 20 minutes in length

In sum and substance, DEF said he and his 3 friends parked their car, he got out of car, saw a car behind them, feared for his safety, and started running. He had his gun in his hand when it accidentally went off once, maybe twice, as he ran. The PO then shot at